[Cite as *State v. Snider*, 2022-Ohio-4566.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-P-0086 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JASON J. SNIDER, | |
| Defendant-Appellant. | Trial Court No. 2018 CR 01259 |

**O P I N I O N**

Decided: December 12, 2022
Judgment: Reversed and remanded

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Adam Parker*, The Goldberg Law Firm, 323 West Lakeside Avenue, Suite 450, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Jason J. Snider, appeals from his convictions for multiple counts of Attempted Rape, Gross Sexual Imposition, Unlawful Sexual Conduct with a Minor, and Sexual Battery, following a jury trial in the Portage County Court of Common Pleas. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

{¶2} On December 13, 2018, the Portage County Grand Jury issued an Indictment, charging Snider with seven counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(b); seven counts of Gross Sexual Imposition, felonies of

the third degree, in violation of R.C. 2907.05(A)(4); six counts of Sexual Battery, felonies of the third degree, in violation of R.C. 2907.03(A)(5); and six counts of Unlawful Sexual Conduct with a Minor, a felony of the third degree, in violation of R.C. 2907.04(A).

{¶3} A jury trial was held on June 29-July 1, 2021. The following pertinent testimony was presented:

{¶4} Johnna Cozza became a foster mother to H.S., born in July 2003, in January 2018 after H.S. was removed from her home where she lived with her biological father, Snider, as well as his girlfriend and H.S.'s siblings. In May or June 2018, Cozza noticed concerning behaviors, asked H.S. if anything was wrong, and H.S. disclosed sexual abuse. Melinda Andel, a pediatric sexual assault nurse examiner employed with the Children's Advocacy Center of Portage County, interviewed H.S. on August 10, 2018. During this interview, H.S. disclosed sexual abuse by Snider, which occurred over a period of several years. It had been a number of months since the last sexual abuse had occurred.

{¶5} Greg Francis, a detective for the Ravenna City Police Department, attempted to discuss these allegations with Snider, who declined to speak with him. He did not attempt to speak to H.S.'s other family members including her brothers.

{¶6} According to Cozza, in December 2018, H.S. was visiting her brothers and was taken to the public defender's office to give a statement, wherein she denied the sexual abuse occurred. This was without Cozza's knowledge. H.S. later indicated to social workers that her recantation was not true and she wanted the matter to "go away."

{¶7} H.S. testified that she had lived in her home with Snider, his girlfriend, her two brothers, and her father's friend prior to her removal in 2017. When she was aged

2

five to seven, Snider touched her vaginal area with his fingers. She could not recall how many times this occurred but it was less than five. During that age, Snider also attempted to have sexual intercourse with her but stopped due to the pain she experienced. During the ages of eight to nine, she testified that he again touched her vaginal area more than five but less than ten times. He continued these acts when she was between the ages of ten and twelve. Between the ages of thirteen and fourteen, he had intercourse with her two times. She described these incidents occurring in the basement in an area she described as his "apartment." Before she was removed in 2017, her "stepmother," Snider's girlfriend, asked her if "stuff happened" and H.S. denied it. H.S. stated that she eventually told Cozza about the abuse because she "suspected something" and it was hard to keep silent.

{¶8} In December 2018, H.S. had a visit with her brothers, who inquired whether the abuse she disclosed happened and who did not believe her. She testified that they wanted her to end the case and she wanted to make them happy. On Christmas Eve, H.S. and her two brothers drove to their dad's lawyer's office and she made a statement to his lawyer and a court reporter wherein she said she lied and the sexual assaults did not happen. In that statement she said that she thought he needed help for his drinking and she did not want to go home, which was the reason for her allegations. Her case worker subsequently reached out and H.S. told her the recantation was a lie.

{¶9} Dr. Paul McPherson, a physician at Akron Children's Hospital, testified regarding the reasons for delayed disclosure in child sexual abuse cases and indicated that about ninety-five percent of such cases have involved delayed disclosure to some extent. He also testified about the reasons why a child who makes a disclosure of abuse

3

may recant, observing that it may be due to feelings of guilt, encouragement from other family members, threats from others, and lack of maturity.

{¶10} Tara Wiseman, Snider's fiancé, testified that she never saw anything inappropriate and never asked H.S. if she had been abused.

{¶11} Sebastian Snider, Snider's son, lived with his father and sister and did not witness any sexual abuse. He testified that he did not tell H.S. to recant. When H.S. mentioned calling her dad's attorney, he told her to "do the right thing" but that no matter what happened, they would still be family.

{¶12} At the conclusion of the trial, the State moved to dismiss five counts of Rape, one count of Gross Sexual Imposition, four counts of Unlawful Sexual Conduct with a Minor, and four counts of Sexual Battery. The jury found Snider guilty of two counts of the lesser-included offense of Attempted Rape, six counts of Gross Sexual Imposition, two counts of Unlawful Sexual Conduct with a Minor, and two counts of Sexual Battery.

{¶13} A sentencing hearing was held on August 9, 2021. The court sentenced Snider to serve consecutive terms of 11 years for each count of Attempted Rape, concurrent terms of sixty months for four counts of Gross Sexual Imposition, and sixty months for each of the two counts of Sexual Battery, to be served concurrent to each other and consecutive to the remaining sentence. The other offenses merged for sentencing.

{¶14} Snider timely appeals and raises the following assignments of error:[1]

---

1. Snider's original appellate counsel filed a brief on March 21, 2022. Thereafter, he moved to withdraw and this court appointed counsel, allowing time to supplement Snider's original brief. Snider's present counsel subsequently filed "Appellant's Amended Brief" which does not supplement the original brief by adding assignments of error but instead replaces the brief, raising some of the same errors as well as changing others. As it appears Snider intended to replace his original brief rather than add to it, we will address the errors as raised in the June 22, 2022 Amended Brief.

4

{¶15} "[1.] Appellant's Convictions are Against the Sufficiency of The Evidence.

{¶16} "[2.] Appellant's Convictions are Against the Manifest Weight of the Evidence.

{¶17} "[3.] The Trial Court Plainly Erred by Allowing a State's Witness to Offer Opinion Testimony Beyond the Scope of his Expert Report.

{¶18} "[4.] Appellant Received Ineffective Assistance of Counsel Where Trial Counsel Failed to Object to Opinion Testimony Beyond the Scope of the Expert's Report."

{¶19} We will first address Snider's third and fourth assignments of error jointly, which are dispositive of the appeal. In his third assignment of error, Snider argues that the court committed plain error by allowing Dr. McPherson to testify as an expert regarding recantation in child sexual abuse cases when his expert report provided to defense counsel did not discuss recantation. In his fourth assignment of error, Snider contends that counsel was ineffective for failing to object to the admission of Dr. McPherson's testimony.

{¶20} "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶21} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio

5

St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶ 10.

{¶22} At issue here is whether allowing Dr. McPherson to testify about certain topics not included in his expert report constituted reversible error. Crim.R. 16(K) provides that an expert witness "shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications." This report "shall be subject to disclosure * * * no later than twenty-one days prior to trial" and failure to disclose the report "shall preclude the expert's testimony at trial." *Id.* The Ohio Supreme Court has addressed conflicting opinions by the appellate courts as to whether trial courts must exclude expert testimony in "all cases of noncompliance" with Crim.R. 16(K). *State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 51. It rejected the analysis that the court can exercise its discretion to utilize other remedies for failure to disclose and observed that "[t]he plain language of Crim.R. 16(K) expressly provides the consequence for failing to disclose an expert's report as required," which is exclusion. *Id.* at ¶ 54-55.

{¶23} As an initial matter, we observe that Dr. McPherson's expert report was not made part of the record before the trial court and is not present for review before this

6

court. As to its contents, Snider observes that it mentions the topic of delayed disclosure but not recantation. It has been held that where an expert's report was not part of the appellate record, the appellate court could not review the trial court's determination regarding compliance with Crim.R. 16(K). *State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, ¶ 10; *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 41-42 (appellate court could not determine whether the evidence examination worksheet provided by the State constituted an expert report where it was not included in the record).

{¶24} We note that both Snider and the State argue that this issue was addressed to some degree at trial, with the State observing in its brief that "[a]lthough his report is not part of the record, questioning revealed that the report addressed the concept of delayed disclosure but not the concept of recantation." During cross-examination of Dr. McPherson, Snider's counsel observed that in his expert report, Dr. McPherson cited studies relating to delayed disclosure and inquired whether he had the names of studies relating to recantation. Dr. McPherson responded that he could look at his files to find them. Counsel then inquired whether Dr. McPherson had been asked to update his expert report, to which he responded negatively. Defense counsel stated: "so no one ever told you to update it to include information on recantation, correct?" Dr. McPherson responded: "No, no one ever told me that." Given this testimony which demonstrates recantation was not included in the report and that the State does not dispute the contents of the report, we will consider whether the failure to disclose the testimony regarding recantation constitutes reversible error.

{¶25} We first must address an issue raised by the State at oral argument. There,

7

the State contended that it had conversations with the defense attorney prior to trial, outside of court, in which defense counsel conceded that Dr. McPherson's testimony should be admitted, thereby precluding the defense from arguing error relating to its admission. This issue was raised by the State for the first time at oral argument and was not set forth in its appellate brief. A party may not advance new arguments for the first time at oral argument. *Hughes v. Hughes*, 2020-Ohio-4653, 159 N.E.3d 893, ¶ 19 (10th Dist.).

{¶26} Nonetheless, even considering the merits of such argument, we do not find that it alters the result of this appeal. The alleged discussions were held outside of the presence of the trial court and were not made part of the record. We observe that there are procedures for adding or correcting statements excluded from the record. App.R. 9(D)(1) allows for parties to submit an "agreed statement * * * in lieu of the record on appeal" to the trial court for approval prior to transmission of the record. App.R. 9(E) allows: "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth." However, neither of these circumstances is applicable here. This is not a case where a statement is needed "in lieu of the record" because the transcript is missing or where a mistake in the record must be corrected. The trial court could not approve any submission made by the parties, if one had been made, to demonstrate they discussed admitting Dr. McPherson's testimony since the discussions were not held before the judge. *See McGeorge v. McGeorge*, 10th Dist. Franklin No. 00AP-1151, 2001 WL 537037, *2 (May 22, 2001) ("pursuant to App.R. 9(E), the reviewing court may only add material that was not made a part of the original record

8

by accident but was in fact considered by the trial court in rendering its "decision"); *Sultaana v. Keefe Supply Co.*, 11th Dist. Ashtabula No. 2021-A-0009, 2021-Ohio-3881, ¶ 16 (seeking to supplement the record on appeal not "to make it conform with what occurred in the trial court, but to alter what actually occurred (or did not occur) in the trial court" is "an impermissible use of Appellate Rule 9(E)"). Since the alleged out-of-court discussion is not part of the record and would not properly be added to the record, we cannot decide the appeal on this basis. An appellate court "cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new" information. *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Had the State intended to rely on its alleged agreement with defense counsel, it had the duty to make such agreement part of the record.

**{¶27}** It has been consistently held that failure to provide an expert report shall result in exclusion of that expert's testimony. In *State v. McGhee*, 11th Dist. Trumbull No. 2014-T-0106, 2017-Ohio-5773, an expert's name was provided to the defense three months prior to trial but a report was not provided until a few days before trial. This court found that the expert's testimony should have been excluded for failure to comply with Crim.R. 16(K). *Id.* at ¶ 21.

**{¶28}** Further, where a report is provided, failure to disclose the specific topics to be addressed in the testimony also requires exclusion of such testimony. In *State v. Walls*, 2018-Ohio-329, 104 N.E.3d 280 (6th Dist.), the court found that although an expert report was disclosed, where the expert's testimony "far exceeded the scope of his report," and did not include that he intended to testify about grooming, delayed disclosure, or

9

recantation, such testimony must be excluded. *Id.* at ¶ 23, 37. *See State v. White*, 8th Dist. Cuyahoga No. 110452, 2022-Ohio-2130, ¶ 39, 42 ("the state violated Crim.R. 16(K) by providing an expert report that did not include conclusions it intended to use at trial" and testimony given outside of the scope of the report should have resulted in exclusion of the testimony at trial); *State v. Carpenter*, 7th Dist. Monroe No. 21 MO 0002, 2022-Ohio-898, ¶ 35 (where the written materials provided did not give insight into trial testimony regarding delayed disclosure and physical factors of sexual assault, allowing testimony on these issues violated Crim.R. 16(K)); *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 119 (where a medical report filed to accompany expert testimony did not address the likelihood of finding injuries from a sexual assault, the court found that "[b]ecause these opinions were not disclosed to the defense, Crim.R. 16(K) required the trial court to preclude [expert] testimony about them at trial").

{¶29} As the Ohio Supreme Court emphasized, "[t]he purpose of the rule [Crim. R. 16(K)] is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report." (Citations omitted.) *Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, at ¶ 48; *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 37. Such surprise occurred here where the defense was not made aware expert testimony about recantation and its causes would be presented.

{¶30} Courts have addressed the foregoing issue under a plain error standard where defense counsel failed to object, as was the case here. *State v. Carpenter*, 7th Dist. Monroe No. 19 MO 0010, 2020-Ohio-5295, ¶ 26 (applying plain error standard to

Case No. 2021-P-0086

admission of expert testimony); *State v. Slade*, 7th Dist. Mahoning No. 16 MA 0177, 2018-Ohio-2767, ¶ 16-17. One court has observed, however, that a plain error review in these circumstances is "effectively unnecessary because a trial court cannot address a Crim.R. 16(K) discovery violation that was never brought to its attention. In such situations, any error would be that of trial counsel, not the trial court." *Walls* at ¶ 34, fn. 1.

{¶31} Here, we similarly observe that the court would not have been aware of the concern that the testimony did not match the expert report where this issue was not raised. While questions were asked regarding the report at the end of cross-examination, the testimony had already been provided and no clear objection was made to the court. Nonetheless, regardless of whether it was the court's duty to exclude the testimony, we find counsel was ineffective for failing to object, warranting reversal.

{¶32} As noted above, because expert testimony was presented outside of the scope of what was disclosed in the expert report, had defense counsel moved for exclusion of such testimony, such motion would necessarily have been granted consistent with the law. Defense counsel made no such motion or objection to the admission of the testimony. The State argues that it was a matter of trial strategy not to object to Dr. McPherson's testimony because counsel did not disagree with the reasons for recanting but sought to disprove them. In this instance, we cannot discern a benefit from or strategy for allowing this testimony. Dr. McPherson's testimony indicated that there are various reasons to recant one's statement, all of which were not related to the untruthful nature of the accusations. This testimony could have easily demonstrated to the jury that H.S.'s recantation did not discredit her testimony or render her lacking in credibility. Further, to the extent that the State emphasizes that Snider's counsel questioned H.S. about the

11

events surrounding her recantation, counsel could have done this regardless of whether McPherson had testified on this topic. This would allow the defense to discredit H.S. without allowing the jury to hear expert testimony justifying the reasons her recantation was false. The State essentially emphasizes the actions counsel took to disprove the reasons for recantation given by McPherson, but McPherson's testimony would not have required refutation if it was not admitted in the first place. We recognize that there is a strong presumption that a challenged action by counsel "might be considered sound trial strategy," *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995), but we do not find that presumption applies here. It has been held that "the failure to object to the admission of the expert testimony [given in violation of Crim.R.16 (K)] cannot be excused as trial strategy." *State v. Davis*, 1st Dist. Hamilton No. C-190302, 2021-Ohio-1693, ¶ 69.

**{¶33}** To reverse based on ineffective assistance, it is also necessary to find the error was prejudicial. In the present matter, the convictions were based on the testimony of H.S. There was no physical evidence to corroborate her testimony or witnesses to the abuse. After disclosing the sexual abuse to authorities, H.S. recanted the allegations to Snider's attorney and before a court reporter. She subsequently stated she had been lying when recanting. Given her inconsistent statements regarding whether the abuse occurred, testimony from Dr. McPherson regarding reasons a child victim may recant was of significant importance in this case. It likely had an impact on the jury's determination of guilt.

**{¶34}** In *McGhee*, this court found that expert testimony which explained delayed disclosure was important to the State's case and may have "significantly buttressed" the victim's credibility to the prejudice of the defendant, since the jury might otherwise

12

"question" the victim's testimony that the defendant had been molesting her for four years. 2017-Ohio-5773, at ¶ 20. Similarly, in *Walls*, the court determined that failure to properly disclose an expert report was prejudicial because the expert's testimony was intended to "carry great weight" and there was no physical evidence in the case. 2018-Ohio-329, ¶ 45-46. As the court noted, "[t]he state's case hinged largely upon whether the jury believed" the victim and the expert's "testimony was important to overcome credibility issues arising from" the victim's "repeated denials of abuse, * * * initial statements of support for her father, * * * her delayed disclosure of abuse followed by recantation, and * * * additional instances of dishonesty." *Id.* at ¶ 46. *See also State v. Bellamy*, 5th Dist. Delaware No. 19 CAA 08 0048, 2021-Ohio-40, ¶ 43-44, *rev'd on other grounds*, __ Ohio St.3d __, 2022-Ohio-3698, __ N.E.3d __ (the defendant was prejudiced when testimony regarding delayed reporting was given where the case "hinged entirely on the credibility of" the victim and there was no forensic evidence, witnesses, or incriminating statements by the defendant); *State v. Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, ¶ 22, 25 (without testimony regarding delayed disclosure, the jury may have viewed the victim's testimony in a different light; "the state's case depending on which witness was more credible," the victim or the defendant, and the "expert's testimony likely colored the jury's ability to properly weigh the credibility of the witness"). Consistent with the foregoing, and given that this case hinged on the credibility of H.S., there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. We recognize the serious nature of these charges and, given the facts of this case, remanding for a trial held in accordance with proper procedure is necessary to achieve a just result.

13

{¶35} The third and fourth assignments are with merit.

{¶36} In his first assignment of error, Snider argues that his convictions were not supported by sufficient evidence. Although reversing the convictions on the grounds stated above, we will address this issue since a finding that a conviction is supported by insufficient evidence "is functionally an acquittal" and bars retrial. *State v. Ramirez*, 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, ¶ 12.

{¶37} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary (6 Ed.1990), 1433. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶38} To convict Snider of Gross Sexual Imposition, the State was required to prove, beyond a reasonable doubt, that he had "sexual contact with another" when "[t]he other person * * * is less than thirteen years of age." R.C. 2907.05(A)(4). For Sexual Battery, it was required to prove that he "engage[d] in sexual conduct with another" when he was "the other person's natural or adoptive parent * * *." R.C. 2907.03(A)(5). To convict him of Unlawful Sexual Conduct with a Minor, the State was required to prove Snider did "engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than

14

sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(A). Finally, as to Attempted Rape, R.C. 2923.02(A) provides: "No person, purposely or knowingly, when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." The Rape statute provides: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age * * *." R.C. 2907.02(A)(1)(b).

{¶39} First, Snider argues that the "only evidence of Appellant's guilt was the testimony of H.S." and that, "[g]iven her contradictory statements, H.S.'s testimony was not sufficient for a reasonable jury to find Appellant guilty beyond a reasonable doubt." "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 25 (1st Dist.). The issue of whether H.S.'s testimony was believable is not a relevant consideration in a sufficiency analysis.

{¶40} H.S. testified as to multiple acts of sexual conduct and sexual contact committed by her father when she was between five and fourteen years old. These included repeated acts of touching her vaginal area and multiple acts of penetration or attempted penetration. This testimony established each of the elements of the offenses, including sexual conduct and sexual contact, her age at the time of the sexual acts, and, for Sexual Battery, that Snider was the victim's parent.

{¶41} Snider also argues that "the evidence for the second of Appellant's convictions for attempted rape is particularly lacking" since she testified that the

15

Attempted Rape occurred "once or twice" which could not support two convictions. The Attempted Rape convictions were for conduct that occurred when H.S. was less than ten years old. H.S. testified that when she was between five and seven, Snider began to penetrate her with his penis but stopped because it hurt her, saying this happened "once or twice." However, she also later said that there were "attempts" at penetration during that time period. The prosecutor followed up, stating, "I think you said that happened on approximately a couple of occasions in that time frame [between the ages of five and seven], to which H.S. responded affirmatively. While her statement about "one or two" attempts and later statements referencing "attempts" in the plural may be conflicting and raise questions about how much weight to give such testimony, we find that there is sufficient evidence to demonstrate multiple attempted rapes occurred.

{¶42} The first assignment of error is without merit.

{¶43} In his second assignment of error, Snider argues that his convictions were not supported by the weight of the evidence. Since we are reversing the convictions for the reasons addressed above, this assignment of error is moot.

{¶44} For the foregoing reasons, Snider's convictions for Attempted Rape, Gross Sexual Imposition, Unlawful Sexual Conduct with a Minor, and Sexual Battery are reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

THOMAS R. WRIGHT, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents, with a Dissenting Opinion.

16

Case No. 2021-P-0086

_____

CYNTHIA WESTCOTT RICE, J., dissents, with a Dissenting Opinion.

**{¶45}** I respectfully dissent.

**{¶46}** While I agree it was erroneous to allow Dr. Pherson to testify as an expert regarding recantation in child sexual abuse cases when his expert report provided to defense counsel did not discuss recantation, I do not believe defense counsel was ineffective for failing to object to its admission. Instead, I view defense counsel's decision not to object as a trial strategy. Objecting to the testimony may have drawn undue attention to the matter; it was reasonable for defense counsel to decide that not objecting to the testimony was less damaging than objecting to the testimony. Alternatively, defense counsel may not have objected because, knowing that the issue of recantation was going to be raised, counsel wanted the opportunity to challenge the expert testimony on the issue of recantation.

**{¶47}** Moreover, even if the failure to object was not trial strategy, I would find that such error was not prejudicial and constituted only harmless error. "After finding that the trial court[ ] erred in admitting the expert testimony, * * * courts of appeals next consider[ ] Crim.R. 52 and applied the harmless-error analysis established in *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 23, in order to determine whether the error was reversible." *State v. Boaston,* 160 Ohio St.3d 46, 2020-Ohio-1061, ¶60, citing *State v. Walls,* 6th Dist. Erie Nos. E-16-027 and E-16-028, 2018-Ohio-329, at ¶40-

17

41, and *State v. Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, ¶20.

**{¶48}** Crim.R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Id.* "Under Crim.R. 52, in order to prejudice a defendant's substantial rights, the error '"must have affected the outcome of the [trial] court proceedings."'" (Brackets sic.) *Boaston, supra,* at ¶62, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶7, quoting *United States v. Olano*, 507 U.S. 725, 734 (1993).

**{¶49}** The Supreme Court of Ohio has set forth a three-part analysis to guide appellate courts in determining whether the erroneous admission of certain evidence affected the defendant's substantial rights so as to require a new trial or whether the admission of that evidence was harmless error under Crim.R. 52(A):

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. (Citations omitted.) *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶37.

**{¶50}** As the majority stated, the purpose of Crim.R. 16(K) is to avoid unfair surprise and allow the defense an opportunity to challenge the expert's findings, analysis, or qualifications. *Boaston, supra.* I would find that Dr. McPherson's testimony did not constitute unfair surprise. First, the issue of recantation was raised long before Dr. McPherson testified. In fact, H.S. provided her recantation to defense counsel directly. There can be no argument that defense counsel was not aware that recantation was at issue in this case. Furthermore, defense counsel thoroughly cross-examined Dr.

18

McPherson on the issue of recantation. Second, the testimony provided by Dr. McPherson regarding recantation was brief and common knowledge. In fact, during voir dire, in response to counsel's question, one juror suggested a child may recant because they are afraid or may not want to "terrify her family." Finally, Dr. McPherson's testimony was not the only testimony on the matter of recantation. H.S. herself testified that she agreed to recant her initial testimony because she wanted to make her brothers happy. Accordingly, I would find that the failure to exclude the recantation testimony was not prejudicial to the defendant but was harmless error. Even excluding Dr. McPherson's recantation testimony and viewing only the remaining evidence, I would find that the state presented evidence beyond a reasonable doubt of defendant's guilt.

{¶51} Because I would find that counsel was not ineffective for failing to object to Dr. McPherson's testimony regarding recantation and because the inclusion of his testimony was harmless error, I would affirm the decision of the lower court. I respectfully dissent.

19