[Cite as *State v. McGhee*, 2017-Ohio-5773.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-T-0106** |
| BRIAN R. MCGHEE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2014 CR 173.

Judgment: Reversed and remanded.

*Dennis Watkins*, Trumbull County Prosecutor, and *Gabriel M. Wildman*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Brian R. McGhee appeals from the judgment of the Trumbull County Court of Common Pleas, entered on a jury verdict, sentencing him to a total term of imprisonment of 39 years to life, for a series of sexual assaults carried out against his minor stepdaughter, H.H. McGhee contends the trial court erred in permitting Dr. John Melville to give expert testimony regarding the effects of sexual abuse on minors.

McGhee also contends the trial court erred in allowing testimony regarding racist comments he allegedly made, and that his convictions are against the manifest weight of the evidence. Finding that Dr. Melville should not have been allowed to testify, we reverse and remand for new trial.

{¶2} The following facts are taken from the transcript of trial.

{¶3} McGhee began dating Carly, the mother of H.H., around 2007 or 2008. The couple lived together for two years before getting married. H.H. was about eight years old when McGhee and Carly met. Eventually, the couple moved to a trailer park. H.H. testified she initially loved McGhee, and looked on him as the father she had never had. H.H. testified this began to change when she was ten. McGhee was in the habit of having her ride along with him to the store when he bought cigarettes, or odds and ends for the house. Starting when she was ten, he began touching her breasts and vagina, over her clothes, while they drove. Within a few weeks, his conduct escalated, and he began putting his hand inside her blouse and panties, and digitally raping her. Quickly, he required her to masturbate him, and provide him oral sex. Starting when she was about 12, he began forcing vaginal sex on her at the trailer, when Carly and H.H.'s younger sister, Madison, were not present. H.H. testified this conduct came to an abrupt end when she was 14, and McGee discovered she was dating an African American. H.H. testified McGee was a racist, who often spoke in derogatory terms about African Americans.

{¶4} H.H. testified McGee would molest her four or five times a week, during the four year period in question.

**{¶5}** H.H. testified she lost about 30 lbs., and began slashing her wrists. She testified she had nightmares.

**{¶6}** October 27, 2013, at the dinner table, Madison, who was ten or 11, called H.H. a "thirsty ho" – evidently slang for a sluttish girl. McGhee began laughing, and repeated the phrase. H.H. testified that she was extremely upset by this, that she felt it was true because of the way McGhee had treated her. H.H.'s older cousin, Marie Margel, then aged about 19, was visiting, and confirmed the incident and H.H.'s reaction in her testimony. Sometime around midnight, H.H. went to Marie, and revealed McGhee's conduct. Marie insisted H.H. call her mother, Carly, who was working as a security guard at a local factory. The girls left the trailer, and went down to the trailer park entrance, and called Carly. Carly called the Weathersfield Police Department. Sergeant Todd Garlow and Patrolman George Antonell responded, and found the two girls near the road. They testified H.H. was very upset, and crying. Carly arrived soon after. The officers went to the McGhee trailer, on learning that Madison was still inside. The officers found her to be asleep, and informed McGhee of his stepdaughter's allegations. McGhee gathered some items and left. Carly, H.H., Marie, and Madison also gathered some items, and went to relatives in New Castle, Pennsylvania.

**{¶7}** At trial, McGhee testified on his own behalf, and firmly denied H.H.'s allegations. He considered she was upset with him for being the family disciplinarian.

**{¶8}** Other relevant facts shall appear in connection with the analysis of the first assignment of error.

**{¶9}** March 10, 2014, the Trumbull County Grand Jury returned an indictment in 13 counts against McGhee: counts one through three, for gross sexual imposition,

3

third degree felonies in violation of R.C. 2907.05(A)(4) and (C)(2); counts four through nine, for rape, first degree felonies in violation of R.C. 2907.02(A)(1)(b) and (B), and R.C. 2971.03(B)(1)(c); and counts ten through 13, for rape, first degree felonies in violation of R.C. 2907.02(A)(2) and (B). McGhee pleaded not guilty that same day. Motion practice ensued. The matter came on for jury trial October 20, 2014, and the jury returned verdicts of guilty on each count October 22, 2014. Sentencing hearing was held November 5, 2014. The trial court sentenced McGhee to concurrent terms of 3 years for each of the gross sexual imposition convictions. It sentenced him to concurrent terms imprisonment of 25 years to life on the convictions for rapes set for in counts four through nine, to be served consecutive to the terms imposed for counts one through three. It sentenced him to concurrent terms of imprisonment for the rapes set forth in counts ten through 13, to be served consecutive to the terms imposed for counts one through nine. The trial court further informed McGhee regarding post release control, and designated him a tier three sex offender. The sentence was memorialized in a judgment entry filed November 17, 2014.

{¶10} McGhee timely noticed appeal, assigning three errors. The first reads: "The trial court erred and abused its discretion by denying appellant's motion to exclude the expert testimony of Dr. Melville." McGhee presents the following issue for review: "Whether a trial court errs and abuses its discretion by denying a criminal defendant's motion to exclude testimony of an expert witness, where the record reveals that a written report was not provided by the expert until the last minute."

{¶11} H.H. was examined at the Child Advocacy Center, part of Akron Children's Hospital, in Boardman, Ohio October 29, 2013, two days after she revealed the alleged

4

abuse. The site director of the Center is Dr. John Melville, an expert in child sexual abuse. He is assisted by Nurse Practitioner Jane Gorsuch, who conducted the actual physical examination of H.H. On October 29, 2013, H.H. came in with her mother. Dr. Melville testified the procedure is to conduct an interview with the parent or parents of the alleged victim, followed by a forensic interview with the child, concerning his or her allegations. In this case, the interview was actually conducted by Megan Martin, a caseworker with Trumbull County Children Services, while Nurse Gorsuch observed through a window. Dr. Melville testified this is normal protocol. Nurse Gorsuch then conducted a complete physical examination of H.H., which revealed no signs of injury that could result from sexual activity or assault.

{¶12} November 6, 2013, Nurse Gorsuch prepared a written report of her findings. Dr. Melville testified he reviews Nurse Gorsuch's findings, but does not approve the actual reports. McGhee moved for discovery March 27, 2014. The state responded July 21, 2014, three months prior to trial. The state's witness list included the names of both Dr. Melville and Nurse Gorsuch, and their curricula vitae were attached. Evidently, Nurse Gorsuch's report was also provided at some point.

{¶13} October 15, 2014, five days prior to commencement of trial, McGhee moved in limine to exclude any expert testimony by Dr. Melville, alleging he had failed to provide an expert's report 21 days prior to trial, as required by Crim.R. 16(K). The issue had come up at a pretrial, where the state revealed it intended to question Dr. Melville regarding the reasons for "delayed disclosure" of sexual abuse by children. In response to the motion in limine, the state provided a report from Dr. Melville, supplementing that prepared by Nurse Gorsuch, the following day. Prior to trial, McGhee's counsel

renewed his motion in limine regarding Dr. Melville. Noting it has discretion to alter the time limits set forth in Crim.R. 16(K), and that defense counsel had known for months that Dr. Melville might testify, the trial court held the jury would benefit from Dr. Melville's general description of the effects of sexual abuse on children. Thus, the motion in limine was overruled.

**{¶14}** At trial, Dr. Melville testified extensively regarding the reasons children delay disclosing sexual abuse. He testified this occurs commonly. He further testified extensively on why H.H. might display no physical signs of sexual activity, and that this, too, is common.

**{¶15}** "A trial court's evidentiary rulings are reviewed under an abuse of discretion standard. *State v. Poling,* 11th Dist. No. 2008–A–0071, 2010–Ohio–1155, ¶19, citing *State v. Sweeney,* 11th Dist. No. 2006–L–252, 2007–Ohio–5223, ¶2. Even where a court abuses its discretion in the admission of evidence, we must review whether the defendant suffered material prejudice due to the ruling. *Id.*" *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶61.

**{¶16}** The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶17}** Crim.R. 16(K) provides:

**{¶18}** "An expert witness for either side shall prepare a written report

6

summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court *for good cause shown*, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial." (Emphasis added.)

{¶19} The purpose of Crim.R. 16(K) is to prevent surprise, trial by ambush. In this case, the state provided Dr. Melville's name to the defense three months before trial. But it never provided any report by him until a few days before trial. The report submitted originally by the state was written by Nurse Gorsuch, who conducted the actual examination of H.H., while Megan Martin conducted the forensic interview. The state did call Ms. Martin to testify, so the summary in the report of the interview came in properly. However, if the state wished to introduce expert testimony on the subject of the physical examination, and its results, it should have called Nurse Gorsuch, and tried to qualify her as an expert. It did not. Dr. Melville's testimony regarding why female children often do not display physical signs of sexual activity or trauma was extremely important to the state's case.

{¶20} Further, Dr. Melville's testimony regarding delayed disclosure was vital to the state's case. Otherwise, a jury might well question H.H.'s testimony that McGhee had been molesting her for four years. Thus, Dr. Melville's testimony may have significantly buttressed her credibility, to McGhee's prejudice.

{¶21} As the trial court noted, Crim.R. 16(K) allows the court to modify the 21 day time limit set forth in the rule. However, this may only be done for "good cause

shown." In this case, the state never made a showing of good cause for not obtaining a report from Dr. Melville until days before trial. In opposing McGhee's motion in limine regarding Dr. Melville's testimony, the assistant prosecutor told the trial court: "I consider [Dr. Melville] a crucial witness to this case." We agree. Consequently his testimony should have been excluded for failure to comply with Crim.R. 16(K).

{¶22} The first assignment of error **has** merit.

{¶23} The second assignment of error reads: "The trial court erred and abused its discretion by permitting testimony concerning racial remarks allegedly made by appellant, which were extremely prejudicial and had no bearing on the case." The third assignment of error reads: "Appellant's convictions are against the manifest weight of the evidence." We decline to reach these assignments of error deeming them moot. App.R. 12(A)(1)(c).

{¶24} The judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for new trial.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

8