[Cite as *State v. Allenbaugh*, 2020-Ohio-68.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2019-A-0017** |
| - vs - | : | |
| MARK H. ALLENBAUGH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 2017 TRD 04031.

Judgment: Reversed and remanded.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer*, Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Mark H. Allenbaugh*, pro se, 2934 Shirley Street, Ashtabula, OH 44004 (Defendant-Appellant).

MATT LYNCH, J.

{¶1}  On December 1, 2017, Mark H. Allenbaugh was issued a traffic ticket, charging him with a violation of R.C. 4511.21(B)(1)(a) ("[i]t is prima-facie lawful * * * for the operator of a motor vehicle * * * to operate the same at a speed not exceeding * * * [t]wenty miles per hour in school zones during school recess and while children are going to or leaving school during the opening or closing hours").  Allenbaugh was arraigned the same day and entered a plea of not guilty.

{¶2}  On February 23, 2018, a pre-trial hearing was held at which Allenbaugh

asked "that the State * * * identify any expert testimony it intends to introduce into evidence." The State responded that "the only witness that the State would call would be Trooper Balcomb." A status hearing was scheduled for June 15 and trial was scheduled for June 21, 2018.

{¶3} On May 4, 2018, Allenbaugh filed a Motion *in limine* to Exclude All Evidence Pertaining to Laser Speed Detection Device. In part, Allenbaugh argued: "The State has not identified any expert it intends to call to establish the accuracy and scientific reliability of the [LTI 20/20 TruSpeed Laser Speed Gun] thereby precluding its admissibility or any testimony based thereon. Should the State timely identify such an expert, Mr. Allenbaugh requests a *Daubert* hearing on said expert."

{¶4} On May 25, 2018, the State submitted a Response which contained the following: "[T]he State has just learned that an expert is available to provide testimony on the subject speed measuring device but does not have a name, address or CV to provide to the Court or Defendant. The State anticipates supplementing its discovery as soon as this information is provided."

{¶5} On May 29, 2018, the municipal court denied the Motion *in limine*.

{¶6} On June 1, 2018, Allenbaugh filed a Motion *in limine* to Preclude Any Expert Testimony on the grounds that "the State neither has named any expert witness, nor provided Mr. Allenbaugh with any written report of any potential expert witness as required by the Rules of Criminal Procedure."

{¶7} On June 4, 2018, the State filed a Motion for Continuance of the June 21 trial date on the grounds that, inter alia, "the expert who is expected to testify in this matter will be out of the country on that date and thus is unavailable" and "the State has yet to

2

receive the information from the manufacturer regarding the expert's name and CV so that it may be furnished to the Defendant in discovery."

{¶8} On the same date, the municipal court granted the State's Motion, rescheduled trial for July 19, 2018, and ordered the State to produce the expert's name and CV to Allenbaugh by the June 15 status hearing. The court denied Allenbaugh's Motion *in limine* as moot as it was "granting the State's request for a continuance of trial."

{¶9} On June 15, 2018, the State filed a Supplement to Discovery, advising Allenbaugh that it anticipated calling Wyatt Kilgallin as a witness at trial and providing him a copy of Kilgallin's resume. The status hearing was continued sua sponte by the municipal court.

{¶10} On June 29, 2018, Allenbaugh filed a Third Motion *in limine* to Exclude Any Expert Testimony on the grounds that "the State has not provided Mr. Allenbaugh with any written report of any potential expert witness as required by the Rules of Criminal Procedure."

{¶11} On July 5, 2018, a hearing was held on the Third Motion *in limine*.

{¶12} On July 6, 2018, the municipal court issued its ruling, which denied the Motion:

> In the instant case, any report submitted by the expert would not apply to the specific facts of the Defendant's case, or the ultimate issue as to guilt or innocence, but whether or not the LTI 20/20 TruSpeed Laser is a scientifically reliable measure of speed in general. The Defendant, by his own admission, was well aware of the fact that an expert was needed in order for the Court to take judicial notice of the scientific reliability of the LTI 20/20 TruSpeed Laser. Defendant is not surprised, nor is he prejudiced, as Defendant is well aware that the State's expert opinion will be along the lines that the LTI 20/20 TruSpeed Laser is a scientifically reliable measure of speed. Defendant will have the opportunity to challenge the expert's opinion prior to trial, through cross-examination and

3

presentation of his own expert if he so chooses.

The court scheduled a "Judicial Notice" hearing for July 19, 2018, "with a trial to follow."

{¶13} On July 12, 2018, Allenbaugh filed a Motion for Continuance of trial on the grounds that an essential fact witness for the defense was unavailable on July 19, which Motion the municipal court denied.

{¶14} On July 19, 2018, the municipal court did grant a continuance after it was learned that the State had provided Allenbaugh with the User's Manual for the LTI 20/20 TruSpeed Laser. The Judicial Notice hearing was rescheduled for November 1, 2018, and trial for December 6, 2018.

{¶15} On November 1, 2018, the municipal court held the Daubert or judicial notice hearing. Allenbaugh did not appear. Wyatt Kilgallin, an electronics professor at the University of Akron and sometime contractor for Laser Technology Incorporated, testified regarding the operation and reliability of the LTI 20/20 TruSpeed Laser: "It sends out [a] pulse of light and waits for the echo back, and it will determine how far away something is and how long it took for that pulse of light to get out and come back. * * * Pulse number one goes back out, comes back, says * * * something's 500 feet away. Well, then pulse number two goes out, comes back, okay, 499 [feet]. Then, pulse three, pulse four, pulse five and * * * then pulse 40 comes back and says * * * 460 feet away. And so, from that set of data, then it can calculate a speed and the history of where the target was at time number one, time number two, time number three, time number four, and it basically does * * * a computation of distance versus time * * * over this history, and then calculates a velocity of the vehicle based on that."

{¶16} On November 7, 2018, the municipal court took judicial notice "of the fact

4

that the LTI 20/20 TruSpeed Laser device is an accurate device to determine the speed of a vehicle pursuant to Evid.R. 201(B)."

{¶17} On December 6, 2018, Allenbaugh's case was tried before the municipal court judge.

{¶18} Trooper Scotty Balcomb of the Ohio State Patrol in Ashtabula County testified on behalf of the State. On December 1, 2017, at approximately 7:40 a.m., Balcomb was on the east side of Dairy Queen on U.S. Route 20 (East Prospect Road) in Ashtabula Township, Ohio. This location is within a "20 mile-an-hour school zone between the hours of 7:00 a.m. and 8:00 a.m." because of the proximity of Wallace H. Braden MIddle School. Balcomb observed Allenbaugh travelling westbound on Route 20 in excess of the posted speed limit. He visually estimated Allenbaugh's speed at 38 to 40 miles per hour and, using a TruSpeed Laser, obtained speed readings of 40, 40, and 41 miles per hour. The laser reading of Allenbaugh's speed was taken at a distance of approximately 387 feet.

{¶19} Dennis Mitchell, a teacher at Braden Middle School, testified on Allenbaugh's behalf. On December 1, 2017, Mitchell was standing at the rear entrance of the school when Allenbaugh dropped off his children. Mitchell was about to return to his classroom as the 7:39 a.m. bell had rung to warn students that school was about to begin.

{¶20} The distance from the point at which Allenbaugh dropped his children off to the point at which Trooper Balcomb read his speed was approximately 1,635 feet.

{¶21} William Billington, the former principal of Braden Middle School, testified on Allenbaugh's behalf. Billington testified that students have three minutes following the

5

warning bell to arrive at their classrooms for attendance at 7:42 a.m.

{¶22} On December 10, 2018, the municipal court found Allenbaugh guilty of speeding in a school zone and imposed a fine of fifty dollars, stayed pending appeal.

{¶23} On January 28, 2019, Allenbaugh filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶24} "[1.] The trial court committed prejudicial error in allowing the State to name its expert after the expiration of the deadline mandated by the Rule of Criminal Procedure 16(K), which required a showing of both good cause and lack of prejudice to defendant."

{¶25} "[2.] The trial court committed prejudicial error by proceeding with the *Daubert* hearing without the presence of the defendant as required by Rule of Criminal Procedure 10(B) and the Sixth Amendment of the U.S. Constitution."

{¶26} "[3.] The verdict was against the weight of the evidence."

{¶27} In his first assignment of error, Allenbaugh challenges the municipal court's decision to allow the State's expert, Kilgallin, to testify in violation of Criminal Rule 16, which provides in relevant part:

> **(K) Expert Witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.
>
> **(L) Regulation of Discovery.**
>
> (1)    The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this

6

rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

Crim.R. 16(K).

{¶28} We note that Ohio Criminal Rule 1(C)(3) provides: "These rules, to the extent that specific procedure is provided by other rules of the Supreme Court or to the extent that they would by their nature be clearly inapplicable, shall not apply * * * in cases covered by the Uniform Traffic Rules * * *." The Traffic Rules prescribe no procedures regarding the disclosure of expert reports nor the necessity of the defendant's physical presence at trial, see Criminal Rule 43 discussed *infra*. As these Criminal Rules are not "clearly inapplicable," there is no impediment to their application in the present case. *Cleveland v. Winchell*, 3 Ohio App.3d 186, 188, fn. 4, 444 N.E.2d 465 (8th Dist.1981); Traf.R. 20 ("[i]f no procedure is specifically prescribed by these rules, the Rules of Criminal Procedure and the applicable law apply").

{¶29} "The purpose of the rule [16(K)] is to avoid unfair surprise by providing notice to the defense and allowing the defense an opportunity to challenge the expert's findings, analysis, or qualifications, possibly with the support of an adverse expert who could discredit the opinion after carefully reviewing the written report." *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, ¶ 55; *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 37 ("[t]he policy behind these rules is to avoid ambush and thwarting of opposing counsel's ability to effectively cross-examine the expert").

{¶30} "A trial court's ruling on evidentiary issues, including the admissibility of expert opinions, will not be reversed on appeal absent an abuse of discretion and proof

7

of material prejudice." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116.

{¶31} Allenbaugh argues Rule 16 was violated in two respects. First, the State failed to disclose the identity of its expert witness within twenty-one days of trial and "did not even bother to try to demonstrate any good cause for failing to timely identify its expert." Appellant's brief at 11. We disagree.

{¶32} The State first apprised Allenbaugh it intended to have an expert testify as to the reliability of the TruSpeed Laser on May 25, 2018, before any Daubert hearing had been scheduled and more than twenty-one days in advance of the June 21 trial date. The State subsequently moved to continue the June 21 trial date because the expert would not be available on this date and information about the expert's identity and qualifications was not available. The municipal court scheduled a Daubert hearing and trial for July 19 and the State was able to identify its expert and provide Allenbaugh with a resume and copy of a TruSpeed User's Manual on June 15, again more than twenty-one days in advance of the Daubert hearing. Ultimately, the July 19 hearing had to be rescheduled also because the State had produced the wrong User's Manual. The Daubert hearing was finally held on November 1, months after the State had disclosed to Allenbaugh Kilgallin's qualifications and the proper User's Manual. Given the court's continuances of the date of the Daubert hearing, we find no violation of the requirement to identify the expert's identity and qualifications twenty-one days before the hearing. To the extent that good cause was necessary to grant the continuances, the unavailability of the expert and the production of the wrong User's Manual provided adequate justification.

{¶33} Second, Allenbaugh argues Kilgallin never produced a written report which

8

precluded him from challenging the expert's opinion under a strict application of Criminal Rule 16(K). We note, however, that appellate courts vary in the degree of strictness with which they apply Rule 16(K). Some courts construe the language, added to the Rule in 2010, that a "[f]ailure to disclose the written report * * * shall preclude the expert's testimony," as absolute. *See, e.g., State v. Walls*, 2018-Ohio-329, 104 N.E.3d 280, ¶ 31 (6th Dist.) ("Crim.R. 16(K) mandates exclusion of expert testimony where a written report has not been disclosed in accordance with the rule"); *State v. Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, ¶ 10 ("[t]he rule * * * contains a simple remedy for a violation"). Other courts, in contrast, have affirmed that, "while Crim.R. 16(K) contains mandatory language for compliance, such language, when read in context with Crim.R. 16(L), does not abolish the trial court's discretion in regards to evidentiary matters." *State v. Davis*, 2018-Ohio-4368, 121 N.E.3d 864, ¶ 97 (3d Dist.); *State v. Gardner*, 8th Dist. Cuyahoga No. 107573, 2019-Ohio-1780, ¶ 49 ("[n]otwithstanding Crim.R. 16(K), sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court").

{¶34} This court has adhered to the latter position and held that, where "no expert report has been provided, the issue becomes whether the trial court abuses its discretion in admitting the testimony in the absence of a Crim.R. 16(K) report." *Fetty*, 2012-Ohio-6127, at ¶ 44.

{¶35} In the present case, we find no abuse of discretion. The municipal court properly noted in its denial of Allenbaugh's Third Motion *in limine* that Kilgallin was only testifying as to the scientific reliability of the TruSpeed Laser in a pretrial Daubert hearing, not to the ultimate issue of Allenbaugh's guilt or innocence. The purpose of the hearing

9

and of Kilgallin's testimony was known to Allenbaugh, who had insisted that such hearing be held, and the court afforded him the opportunity of challenging Kilgallin's testimony by cross-examination or the retention of his own expert over three months prior to the hearing and actual trial. Even courts which profess a strict application of the Rule acknowledge that "common sense should not be ignored when there has been clear compliance **with the purpose of Crim.R. 16(K)**, which is to eliminate unfair surprise at trial by requiring advance disclosure of an expert's qualifications and opinions so that opposing counsel has sufficient time to prepare for cross-examination, retain a rebuttal expert, and seek court intervention if there is reason to believe that the disclosures are inadequate." (Emphasis added.) *Walls* at ¶ 35. Here, Allenbaugh knew that the purpose of the hearing was to determine the scientific reliability of the TruSpeed Laser, knew that Kilgallin was going to testify that it was scientifically reliable, and was afforded abundant time to prepare counterarguments.

{¶36} Additionally, several courts, including this one, have found that there is adequate compliance with the requirement to produce an expert report where other evidence reflecting the expert's testimony has been provided to the opposing party. In *Fetty*, for example, this court concluded that "this appears to be a case where the disclosure of the medical records in lieu of an expert report adequately provided the requesting party with the information it needed." *Fetty*, at ¶ 45. *See also State v. Rich*, 12th Dist. Butler No. CA2012-03-044, 2013-Ohio-857, ¶ 54 ("the state complied with Crim.R. 16(K) when, during pretrial discovery, it provided the defense with the evidence submission form prepared by Detective Henson which contained a summary of [his] findings and conclusions"); *State v. Norman*, 8th Dist. Cuyahoga No. 104244, 2017-Ohio-

92, ¶ 75 ("the trial court has discretion to determine whether in the absence of an expert report, the medical records of a victim may satisfy the [Crim.R. 16(K)] requirement").

{¶37} In the present case, Allenbaugh was provided a copy of the User's Manual for the TruSpeed Laser which, although not asserting its own scientific reliability, certainly apprised him of the substance of Kilgallin's testimony. As Kilgallin stated when identifying the Manual as an exhibit: the Manual "gives the instructions here as to how to set the [device] up, how to interpret the error codes, and it touches on the cosine effect, what the sounds mean and * * * this is basically the long version of what I've given you today."

{¶38} Allenbaugh relies heavily on this court's opinion in *State v. McGhee*, 11th Dist. Trumbull No. 2014-T-0106, 2017-Ohio-5773, wherein it was held that the trial court abused its discretion by not excluding a witness' testimony "for failure to comply with Crim.R. 16(K)." *Id.* at ¶ 21. *McGhee* is distinguishable, however, in several material respects. In *McGhee* the expert witness in question testified regarding the results of a physical examination conducted by a nurse who did not testify at trial; the witness' testimony bolstered the credibility of the victim; the witness testified regarding matters not disclosed to the defense until four days before trial; and the State made no showing of cause for the untimely disclosure. *Id.* at ¶ 19-21. None of these circumstances found prejudicial in *McGhee* existed in the present case.

{¶39} The first assignment of error is without merit.

{¶40} In the second assignment of error, Allenbaugh argues that the municipal court erred by conducting the Daubert hearing in his absence and/or taking judicial notice of Kilgallin's testimony at the hearing in lieu of having Kilgallin testify at trial.

{¶41} "For a person to be convicted of speeding based on laser-device evidence,

11

evidence must be introduced that the laser device is scientifically reliable." *State v. Palmer*, 1st Dist. Hamilton No. C-050750, 2006-Ohio-5456, ¶ 10. "This may be established by expert testimony, or if the trial court has previously determined that a particular device is scientifically dependable, then the court may take judicial notice of this fact." *State v. Bayus*, 11th Dist. Geauga No. 2005-G-2634, 2006-Ohio-1684, ¶ 14; *State v. Kress*, 11th Dist. Trumbull No. 2007-T-0075, 2008-Ohio-1658, ¶ 27.

> This holding does not mean that the prosecution must present expert testimony every time it presents evidence from an LTI 20-20 (or any other) laser device. Rather, it merely means that the prosecution must do it at least once. And the trial court may then take judicial notice of the device's accuracy and dependability, as well as hear testimony concerning any reading obtained from the device.

*Cincinnati v. Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, 821 N.E.2d 613, ¶ 12 (1st Dist.); *Kress* at ¶ 12 ("[e]stablishing the reliability of a speed-measuring device can be accomplished for future cases by (1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record") (citation omitted).

{¶42} Allenbaugh asserts that the "State must proffer expert testimony *at trial* to establish the accuracy and scientific reliability of a laser speed detection device such as the LTI 20-20." Appellant's brief 12. Allenbaugh cites no authority, and this court is aware of none, for the proposition that the foundational requirement that a speed-measuring device be scientifically reliable must be established at trial rather than at a pre-trial hearing. The scientific reliability of a particular device is relevant to its admissibility, "not [to] whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial." *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687

N.E.2d 735 (1998), paragraph one of the syllabus; Evid.R. 104(A) ("[p]reliminary questions concerning * * * the admissibility of evidence shall be determined by the court").[1]

{¶43} In order to sustain a conviction for speeding, it is also necessary that "evidence * * * be introduced to show that the device is in proper working condition to make accurate readings and that the officer is qualified to administer the laser device." *Campbell v. Rosario*, 2018-Ohio-337, 101 N.E.3d 681, ¶ 13 (7th Dist.). These elements, which are relevant to the determination of Allenbaugh's guilt or innocence, do not require expert testimony but may be shown by testimony from police officers with knowledge of the facts of the case, as they pertain to the "sufficiency of the evidence concerning the accuracy of the particular speed meter involved in the instant case and the qualifications of the person using it." *East Cleveland v. Ferell*, 168 Ohio St. 298, 303, 154 N.E.2d 630 (1958). In the context of laser and radar speed-detection devices, expert testimony is only required to establish a foundation for the admissibility of the speed reading, whereas the actual reading must be established by a qualified officer's testimony that the device was functional, duly tested, and properly used.[2]

{¶44} Allenbaugh also contends that the municipal court violated his due process rights under the Federal and Ohio Constitutions by proceeding with the Daubert hearing in his absence.

---

1. We note the peculiar case of *State v. Reck*, 2d Dist. Darke No. 1352 CA, 1994 WL 718230, in which the trial court sua sponte raised the issue of the LTI 20/20's scientific reliability during a suppression hearing unrelated to the laser device. The court of appeals affirmed noting that "both parties acquiesced in this scheme apparently without objection, and neither appear to have been prejudiced by it." *Id.* at *2. In the present case, the municipal court's receiving testimony on the TruSpeed Laser's reliability and then taking judicial notice of that testimony is similarly peculiar and nonprejudicial.

2. Accordingly, the need for expert testimony is obviated where the reliability of the device can be established by judicial notice, unlike the officer's testimony which will always be required to sustain a conviction.

{¶45} "An accused has a fundamental right to be present at all critical stages of his criminal trial." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 139; Crim.R. 43(A) ("the defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence"). "An accused's absence, however, does not necessarily result in prejudicial or constitutional error." *Frazier* at ¶ 139. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, *and to that extent only*." (Citation omitted.) *Id.* "Particularly, as regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists only where 'a fair and just hearing * * * [is] thwarted by his absence.'" (Citation omitted.) *State v. Williams*, 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 (1983).

{¶46} Allenbaugh's absence at the Daubert hearing deprived him of a fair and just hearing inasmuch as his conviction was based on Trooper Balcomb's laser reading of his speed and that testimony would not have been admissible but for the foundation laid at the November 1, 2018 hearing. As a result of his absence, Kilgallin's testimony regarding the scientific reliability of the TruSpeed Laser was neither challenged nor subjected to cross-examination. In *State v. Nixon*, 2014-Ohio-4303, 20 N.E.3d 404 (11th Dist.), this court recognized "[t]he focus of the inquiry is whether [the defendant's] presence has a 'reasonably substantial' relationship to 'the fullness of his opportunity to defend against the charge.'" (Citation omitted.) *Id.* at ¶ 27. Like the present case, the *Nixon* case involved the defendant's absence at a pretrial at which "important issues were ruled upon and discussed." *Id.* at ¶ 28. Unlike the present case, in *Nixon* "defense counsel advanced

arguments in [the defendant's] defense and * * * ensured that [his] right to due process was protected" so that there was "nothing to indicate the fairness of the proceedings were undermined." *Id.*

{¶47} The State counters that Allenbaugh's absence at the Daubert hearing was, "in effect, a waiver of appearance." Appellee's brief at 6-7. Criminal Rule 43 provides that "the defendant's voluntary absence after the trial has been commenced in the defendant's presence shall not prevent continuing the trial to and including the verdict" and that "[t]he defendant may waive, in writing or on the record, the defendant's right to be physically present under these rules with leave of court." Crim.R. 43(A)(1) and (3). Neither of these conditions have been satisfied in the present case and no argument has been advanced otherwise. Allenbaugh had a fundamental right to be present at the Daubert hearing and it was prejudicial error for the trial court to proceed in his absence.

{¶48} The second assignment of error is with merit.

{¶49} In the third assignment of error, Allenbaugh argues his conviction is against the manifest weight of the evidence. Given our disposition of the second assignment of error, which requires the reversal of Allenbaugh's conviction, this assignment of error is rendered moot.

{¶50} We further note, since Allenbaugh has raised an argument under this assignment of error relative to the sufficiency of the evidence, that he may still be retried. Normally, "[i]f the evidence is found to be insufficient to prove every element beyond a reasonable doubt, the Double Jeopardy Clauses of the United States and Ohio Constitutions bar retrial." *State v. Troisi*, 124 Ohio St.3d 404, 2010-Ohio-275, 922 N.E.2d 957, ¶ 7, citing *State v. Brewer,* 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶

15. However, "when sufficient evidence has been introduced at trial to convict, 'but on appeal, some of that evidence is determined to have been improperly admitted,' retrial is not barred." *Id.* citing *Brewer* at ¶ 25.

{¶51} For the foregoing reasons, Allenbaugh's conviction for speeding in a school zone is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellee.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.