[Cite as *State v. Toney*, 2026-Ohio-933.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                 No. 115261

v.                                       :

CORNELIUS TONEY,                        :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:**  March 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-697304-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jamielle Lamson-Buscho, Assistant Prosecuting Attorney, *for appellee.*

Berkman, Gordon, Murray & DeVan and William C. Livingston, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, for *amicus curiae* Cuyahoga County Public Defender.

SEAN C. GALLAGHER, P.J.:

{¶ 1} Cornelius Toney appeals the jury's finding him guilty of two counts of rape of a minor under the age of ten years old. He also appeals the resulting life sentences with the possibility of parole after 15 years for each offense, which were consecutively imposed under R.C. 2929.14(C)(4). For the following reasons, we affirm.

{¶ 2} This case involves the delayed disclosure by Toney's relative of two rapes that occurred when the victim was approximately seven years old (and Toney was 20). In 2014 when the victim's family lived in Maple Heights, Ohio, Toney would visit and stay in the family's home. During that time, Toney "favored" the victim over her brothers and routinely slept in her bed. One night Toney entered the victim's bedroom, pulled her pants off, and raped the victim. The victim was able to recall details of the encounter, including the blanket that she was under at the time, a branded blanket from the Disney movie *Home* that the victim received for her birthday. Toney did not say a word but motioned to the victim to remain quiet. After being raped, the victim went to the bathroom and observed blood from her vaginal area — although the victim told officers in one of the interviews that she could not recall that detail when initially interviewed. Two days later, while Toney and the victim were alone in the house, Toney raped her again on the couch in the living room. Although the victim testified to a third rape, occurring in her bedroom, and additional sexual assaults committed by Toney, the indictment only included two rape charges.

{¶ 3} The victim's mother testified about the victim having rashes and vaginal discharge while living in Maple Heights, but the victim's pediatrician never mentioned that could have been caused by sexual abuse. She also testified to behavioral changes the victim experienced during that time and after.

{¶ 4} The victim first disclosed the abuse when she was 17 years old after being caught smoking marijuana and having a friend staying in her bedroom overnight against her mother's wishes. The victim's mother said she was going to call Toney because she believed the victim had a close relationship with Toney, who would be able to sort through the problems the victim was having. The victim, according to her trial testimony, broke down and asked her mother to not contact Toney. Eventually, the mother was told about the abuse that occurred ten years earlier, and authorities were called.

{¶ 5} Also at trial, in addition to the law enforcement officers investigating the case, the State presented a trauma therapist from the Cleveland Rape Crisis Center, who testified to the victim's treatment for posttraumatic stress disorder, and the forensic interviewer who assessed the victim following the disclosure. The forensic interviewer appeared at trial remotely over Toney's objection. The State argued, without providing any evidence, that the forensic interviewer was in the process of relocating to Panama a couple days after trial and was in California taking care of her elderly parents. According to the State, traveling to Cleveland for the trial was difficult. The trial court permitted the remote testimony because

"the State has demonstrated sufficiently the unavailability of the witness and the admissibility of the testimony." Tr. 284:16-19.

{¶ 6} Following the convictions and imposition of sentences, Toney appealed, advancing seven assignments of error. Each will be addressed in turn but combined when appropriate for the ease of discussion.

{¶ 7} In the first assignment of error, Toney claims the trial court erred by permitting the forensic interviewer to testify remotely at trial. Although we agree, that error is harmless in light of the overwhelming evidence presented largely duplicating the forensic interviewer's testimony.[1]

{¶ 8} The trial court erred by permitting the forensic interviewer to remotely testify at trial solely based on the State's unverified claim of inconvenience because of her personal obligations and professional relocation plans. The law is settled on this issue:

> The Sixth Amendment to the United States Constitution protects the right of a criminal defendant "to be confronted with the witnesses against him." The "primary object" of this provision is to prevent unchallenged testimony from being used to convict an accused—a safeguard that applies to both federal and state prosecutions. The provision encompasses the rights to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to

---

[1] The Cuyahoga County Public Defender filed an amicus brief; however, the brief reiterates the constitutional arguments presented by Toney as to the permissibility of remote trial testimony. The only exception was the public defender's presentation of an additional policy consideration. According to the amicus, the "undersigned counsel and his colleagues have noticed that since the COVID-19 pandemic, trial courts in the jurisdiction have continued to trend toward lax enforcement of the 'face to face' confrontation requirement — something that was not even really countenanced by the Ohio Supreme Court at the very height of the pandemic." No cases were provided to substantiate their belief as to the existence of the claimed trend.

force the witness to be subject to cross-examination. Importantly, it has been understood to "guarantee[] the defendant a face-to-face meeting with witnesses appearing before the trier of fact."

(Internal citations omitted.) *State v. Carter*, 2024-Ohio-1247, ¶ 27. Although the face-to-face requirement is not absolute, the requirement is only displaced in limited circumstances "'where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.*, citing *Maryland v. Craig*, 497 U.S. 836, 850 (1990). The evidence being critical to the State's prosecution is not, in and of itself, a compelling public policy interest. *Id.* at ¶ 38. As the Ohio Supreme Court ultimately concluded, "avoiding travel delays and inconvenience does not constitute a state interest anywhere near the same magnitude as" those situations in which remote testimony would be constitutionally permissible. *Id.* at ¶ 39.

{¶ 9} In this case, as in *Carter*, the State failed to present any verified statements or testimony establishing that the forensic interviewer could not travel to appear in person at trial. The State solely relied on arguments it presented to the trial court.

{¶ 10} Further, the trial court's conclusion that the State "demonstrated sufficiently the unavailability of the witness and the admissibility of the testimony" does not meet the standard for permitting remote trial testimony. A witness simply being "unavailable" does not answer the question of whether the denial of the defendant's right to confront a witness in person advances an important public policy. Permitting the remote testimony in this case was in error.

{¶ 11} Notwithstanding, that conclusion does not end the inquiry. The remaining question is whether the trial court's error was harmless. *Id.* at ¶ 46, citing *Delaware v. Van Arsdall*, 475 U.S. 673, 674 (1986) ("While we agree that the trial court's ruling was contrary to the mandate of the Confrontation Clause of the Sixth Amendment, we conclude that the Supreme Court of Delaware was wrong when it declined to consider whether that ruling was harmless in the context of the trial as a whole."). Before an error based on the federal constitution can be deemed harmless, appellate courts must determine whether the error was harmless beyond a reasonable doubt. *Id.* at ¶ 47, citing *Chapman v. California*, 386 U.S. 18, 24 (1967). In this context, the Ohio Supreme Court held that Confrontation Clause violations are considered harmless, "when 'the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt.'" *Id.*, quoting *State v. Hood*, 2012-Ohio-6208, ¶ 43, and *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. "Overwhelming proof becomes readily apparent when 'the allegedly inadmissible statements * * * at most tend[] to corroborate certain details' of the State's case-in-chief." *Id.*, quoting *Schneble v. Florida*, 405 U.S. 427, 431 (1972). If the evidence is primarily cumulative, the constitutional violation will be deemed harmless.

{¶ 12} In this case, the forensic interviewer's testimony was by and large cumulative, if not helpful to Toney in demonstrating inconsistencies in the victim's reporting of the crimes to the various individuals after the disclosure. The forensic interviewer related the victim's disclosure of the sexual abuse. Inasmuch as the

forensic interviewer provided brief testimony regarding the normalcy of delayed disclosures based on her experience, though not as an expert on the subject matter, so too did one of the investigating detectives. Tr. 475-476. Each based their conclusion on their respective experience in handling hundreds of child-rape cases, some involving delayed disclosures, with the detective expressly stating that "because due to circumstances like age, trauma, things like that, people may disclose different things at different times." *Id.* On cross-examination, the detective clarified that his testimony with respect to delayed disclosures was based on his "training and experience," not just the forensic interviewer's testimony. Tr. 479. Toney has not addressed the detective's independent testimony normalizing delayed disclosures in sexual-assault cases involving young children.

{¶ 13} Toney cites three cases to support his claim that the error cannot be deemed harmless: *State v. McGhee*, 2017-Ohio-5773 (11th Dist.); *State v. Walls*, 2018-Ohio-329 (6th Dist.); and *State v. Bellamy*, 2021-Ohio-40 (5th Dist.). All three of those cases were based on Crim.R. 16(K) discovery violations, in which the delayed-disclosure expert testimony was not disclosed to the defendant within 21 days of trial. Based on the violations of the discovery rule, the respective panels found error and determined that the error was not harmless because the delayed-disclosure testimony was only provided by that witness, which permitted the jury to consider the victim's testimony reliable despite the delay, and the only other testimony in the case came from the victim. *See McGhee* at ¶ 21 (noting the State believed that the testimony was "crucial" to the case); *Walls* at ¶ 50 (noting the State

believed the testimony was "vital" to the case); *Bellamy* at ¶ 46. In this case, the forensic interviewer was not declared an expert and there is no argument that a discovery violation occurred through the failure to provide a report.

{¶ 14} Unlike the cited cases, although the victim's testimony in this case was the primary evidence upon which the convictions were based, it was not the sole evidence. The victim's family member corroborated portions of the victim's recollection regarding Toney's relationship with the victim and his predilection to share her bed during the time the family lived at the Maple Heights home. Further, the testimony intimating the normalcy of a delayed disclosure when the victim is a young child was duplicated by the detective, such that the jury was free to consider his testimony even if the forensic interviewer's testimony was discarded. Importantly, the detective's testimony has not been challenged in this appeal, and therefore, we cannot disregard that testimony for the purposes of the harmless-error analysis. *See State v. Quarterman*, 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part) (The parties, not an appellate court, bear the burden of advancing and supporting an argument with citations to legal authority and facts in the record.).

{¶ 15} Accordingly, the first assignment of error is overruled. It bears repeating that trial courts should not lightly consider permitting remote testimony in criminal cases in violation of a defendant's confrontation rights. Mere inconvenience to the witness or the State is not sufficient to warrant the extraordinary step of permitting remote trial testimony. Nevertheless, the error in

this case is harmless in light of the duplicative nature of the forensic interviewer's testimony.

{¶ 16} In addition to the constitutional question, Toney claims that the forensic interviewer's remote testimony was in violation of Crim.R. 40 and that she was not qualified as an expert to render an opinion on the delayed-disclosure topic under Evid.R. 701, as partially presented in the third assignment of error. In the fourth assignment of error, Toney claims that his trial counsel was ineffective for failing to object to the forensic interviewer's lack of expertise and ability to render an opinion at trial. Importantly, the second prong of the ineffective-assistance-of-counsel claim relies on the existence of prejudice to the defendant. *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶ 17} Having already concluded that the admission of the forensic interviewer's testimony was in error, the additional reasons for the exclusion of that testimony are duplicative. Because all of those errors would also be subject to the same lack of prejudice based on the harmless-error doctrine, the resolution of the first assignment of error also resolves those arguments.

{¶ 18} In the second assignment of error, Toney claims the trial court erred by "instructing" the venire, after asking the parties to disclose the witnesses they identified on their witness lists:

> Please note that the parties are not required to call all of the witnesses that they've just named to you. The Court requires them that they advise the Court of any anticipated or even potential witnesses. So please don't hold it against the parties if they do not call all of the witnesses that were named.

Tr. 50. In addition, during the defense's closing argument, the trial court sustained an objection when Toney's trial counsel asked the jury to "draw [their] own conclusions about why some family's here and some's not." That reference appears to have been an invitation to speculate as to why the victim's family members attended or skipped the trial proceeding.

{¶ 19} According to Toney, those two events violated Crim.R. 16(I), which provides that "[t]he content of the witness list may not be commented upon or disclosed to the jury by opposing counsel, but during argument, the presence or absence of the witness may be commented upon." With respect to the sustained objection, Toney now claims that he should have been permitted to ask the jury to infer that Toney's father's testimony would not have been favorable to the State. *See State v. Ford*, 2019-Ohio-4539, ¶ 309.

{¶ 20} The trial court's statement to the venire was not an instruction, nor was the witness list disclosed by opposing counsel. It was a preliminary statement to the venire at the onset of voir dire by the trial court. Toney has not established that Crim.R. 16(I) is applicable. Most importantly, for the purposes of this appeal, there was no objection preserved by Toney, so that issue is reviewed only for plain error, which we decline to apply. *See Rogers*, 2015-Ohio-2459, ¶ 23 ("But even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it.").

{¶ 21} In addition to that, it is unclear how his statement from closing argument regarding the victim's family members' attendance at trial had anything

to do with the State's decision to not call Toney's father as a witness. The closing argument did not discuss any one witness, and when placed in context, it amounted to a speculative request for the jury to consider why the victim's family members were or were not attending the trial. There is no identified portion of the trial in which Toney was precluded from commenting on the State's failure to call a specific witness with knowledge of the matter. *See, e.g., Ford* at ¶ 309. The second assignment of error is overruled.

{¶ 22} In the remainder of the third assignment of error, Toney claims that the mother's or the therapist's testimony improperly broached victim-impact evidence and should have been excluded. According to Toney, the mother's testimony regarding the victim being in a car accident, the impact the sexual-abuse allegations had on her family dynamics, and the additional surgeries the victim went through were "only designed to appeal to the sympathies of the jurors." Because no objection was timely preserved, our review is for plain error.

{¶ 23} Under the plain-error standard, the defendant must demonstrate that "'but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *State v. West*, 2022-Ohio-1556, ¶ 22, quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 16. Toney solely relies on the argument that permitting the mother to testify with statements arguably touching on the impact to the victim was error. He fails to discuss the plain-error standard beyond the conclusory statement that the error constitutes plain error. "Under that rule, the defendant bears the burden of

demonstrating that a plain error affected his substantial rights." *State v. Perry*, 2004-Ohio-297, ¶ 14, citing *United States v. Olano*, 507 U.S. 725, 734 (1993). In light of the limited argument presented for our review, we decline the invitation to apply the plain-error doctrine. *See, e.g., State v. Carpenter*, 2026-Ohio-116, ¶ 86 (8thDist.) (concluding that even if the error is presumed, the defendant failed to demonstrate that recognition of the error was required to correct a manifest miscarriage of justice, and therefore, the argument was overruled). The third assignment of error is overruled.

{¶ 24} In the fifth assignment of error, Toney claims that the cumulative effect of permitting the forensic interviewer to testify and the error in permitting the victim-impact testimony requires a new trial even if the individual errors alone would not.

{¶ 25} Under the cumulative-error doctrine, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial, even though each of the numerous errors does not individually constitute cause for reversal." *State v. Neyland*, 2014-Ohio-1914, ¶ 257, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. As the Ohio Supreme Court noted, the doctrine is not applicable in cases in which none of the errors committed, whether considered individually or cumulatively, resulted in prejudicial error. *Id.* In this case, although it was error to permit the forensic interviewer to testify remotely, that error was not prejudicial based on the evidence being duplicative of other testimony properly presented to the jury. The only other potential error was

with the victim-impact evidence, also rejected on plain-error grounds. Those two issues did not deprive Toney of a fair trial, and because there was no other identified error upon which the cumulative-error doctrine could be invoked, the fifth assignment of error is overruled.

{¶ 26} In the sixth assignment of error, Toney claims both of his convictions for rape are against the weight of the evidence.

{¶ 27} When evaluating a claim that a verdict is against the manifest weight of the evidence, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice" and the conviction must be reversed and a new trial ordered. *State v. Wilks*, 2018-Ohio-1562, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983).

{¶ 28} Toney claims that the minor inconsistencies in the victim's retelling of her version of events and incidents were sufficient to undermine the overall credibility of the State's case against him. He claims that the victim's different retellings regarding whether she was "bent over" or had her legs raised while on her back during the rape in the living room, her differing account of whether Toney used his hands to inappropriately touch her before the rape in her bedroom, the differing

degree to which she recalled the depth of penetration during the rapes, and the victim's varying testimony on finding blood following the first rape all give rise to an unreliable witness.

{¶ 29} The fact that the jury believed the State's evidence and found the victim's testimony credible despite the limitations and impeachment of the witness, is not in and of itself a basis to declare the convictions to be against the weight of the evidence. It has long been held that the trier of fact is free to believe all, some, or none of the evidence presented by the State or defense at trial. *State v. Smith*, 2010-Ohio-4006, ¶ 16 (8th Dist.). Simply identifying the inconsistencies or avenues of impeachment, evidence heard and considered by the jury, is not sufficient to meet the deferential standard to prove the conviction is against the weight of the evidence.

{¶ 30} In this case, the victim provided a detailed account of the sexual abuse. The minor inconsistencies through the numerous documented retellings she provided the various authorities or health providers, even when coupled with the timing of her disclosure, being on the heels of being reprimanded by her mother, do not render her testimony inherently unreliable. We cannot conclude that the trier of fact lost its way. The sixth assignment of error is overruled.

{¶ 31} In the seventh, and final, assignment of error, Toney claims the trial court improperly considered his silence as the basis for the underlying sentence and that the record does not support the consecutive-sentence findings because he is already serving a life sentence. According to Toney, the trial court's conclusion that

he failed to demonstrate remorse was an implicit reference to Toney's silence. We need not resolve that argument.

{¶ 32} The sentence imposed on each individual rape offense was the statutorily mandated minimum. Under R.C. 2971.03(B)(1)(b), when the victim is less than ten years old the trial court is required to impose a sentence with a "minimum term of fifteen years and a maximum of life imprisonment." The trial court has no discretion to impose a lesser sentence, and therefore, consideration of the sentencing factors for the individual sentences has no bearing on this case.

{¶ 33} Further, the consecutive-sentence findings under R.C. 2929.14(C)(4) do not require consideration of remorse, so that argument has no relevance to the consecutive-sentence findings, which Toney has not challenged in this appeal. His sole claim with respect to the consecutive sentence is that the findings are not supported by the record because life terms were imposed. According to Toney, life sentences cannot be imposed consecutively. R.C. 2929.14(C)(4) authorizes the imposition of consecutive service of all felony sentences, indefinite life terms included. *State v. Eggleton*, 2025-Ohio-1186, ¶ 17 (8th Dist.) ("R.C. 2929.14(C) does not restrict the imposition of consecutive sentences to specific types of felony crimes."), citing *State v. Wright*, 2022-Ohio-1537, ¶ 129; *see also, e.g., Montanez v. May*, 2026-Ohio-90, ¶ 17 (dismissing habeas petition because offender's life sentence, with a minimum term until parole eligibility, imposed consecutively to a definite term was a "valid criminal judgment"). The final assignment of error is overruled.

**{¶ 34}** Toney's convictions for the rape of a child under the age of ten and the resulting sentences are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

DEENA R. CALABRESE, J., and
EILEEN A. GALLAGHER, J., CONCUR